IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Norfolk Division

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CRIMINAL NO. 2:12cr151 |
| | ) | |
| MICHAEL LEE HADDOCK, | ) | |
| | ) | |
| Defendant. | ) | |

**POSITION WITH RESPECT TO SENTENCING FACTORS**

The defendant, Michael Lee Haddock, by counsel, pursuant to Section 6A1.2 of the Sentencing Guidelines and Policy Statements and the Court's Sentencing Procedures Order, respectfully states the position of the Defendant with respect to sentencing factors.

Mr. Haddock's life history and the surrounding facts of his case warrant a sentence of no more than one hundred and twenty months.

**I. STATUTORY AND GUIDELINES OVERVIEW**

Mr. Haddock comes before the Court for sentencing on one count of conspiracy to distribute analogues of controlled substances, in violation of 21 U.S.C. 841(a)(1), (b)(1)(C), 846 and 813, a Class C Felony, with a maximum term of 20 years imprisonment, a fine of $1,000,000, and five years of supervised release. The United States Probation Officer has calculated a Guideline range of 262-327 months (Total Offense Level 39; Criminal History Category I). Mr. Haddock does not agree with the

Presentence Investigation Report (hereinafter referred to as "PSR") and he disputes its contents.

## II. OBJECTIONS

*Drug Calculations and Weight*

Mr. Haddock objects to the calculations utilized to determine the drug weight attributed to him. Not a single one of the analogue drugs attributed to Mr. Haddock is listed in the U.S.S.G. drug equivalency table. According to the commentary under U.S.S.G. § 2D1.1 note 6, when a drug is not specifically referenced in the guidelines, the following three prong approach is recommended:

(A) Whether the controlled substance not referenced in this guideline has a chemical structure that is substantially similar to a controlled substance referenced in this guideline.
(B) Whether the controlled substance not referenced in this guidelines has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance referenced in this guideline.
(C) Whether a lesser or greater quantity of the controlled substance not referenced in this guideline is needed to produce a substantially similar effect on the central nervous system as a controlled substance referenced in this guideline.

For example, in paragraph 12 of the PSR, Methylone is labeled as analog to MDMA and is given a conversion of .5 to determine the conversion to marihuana (According to the commentary to U.S.S.G. § 2D1.1 note 8(D), the conversion for one gram of MDMA is 500 grams of marihuana). However, the DEA, as stipulated to in the Statement of Facts filed on December 5, 2012, has determined that methylone has half the potency of MDMA. The Statement of Facts further stipulates Butylone is analogue to methylone, with the same potency. Neither methylone nor Butylone is specifically referenced in the guidelines. As such, in light of the Statement of Facts and the DEA's findings, the conversion for both drugs should be one gram of methylone to 250 grams of marihuana,

not 500 grams.

There is no stipulation for the conversion or analogue in the Statement of Facts for the following drugs: 4-FMA, 2C-C, 2C-E, 2C-I, 2C-P, AM-2233, AM-1248, 251-NBOME, Ethylone, UR-144, 4-MEO-PCP, 5-MEO-MIPT, 4-ACO-DET, or 4-ACO-DMT and Mr. Haddock objects to the conversions utilized in the PSR. Many of the effects, the potency, and the similarities to existing scheduled substances have not been researched or established. However, for the sake of simplicity, counting only the drug weights to which the analogue drug and its effect on the human body were specifically stated in the Statement of Facts, calculating the weight using the lower conversion for marihuana as stated above still does not alter the guidelines as the resulting marihuana amount remains in excess of 10,000kg.  A discussion regarding the independent investigation by the United States Probation Officer that results in an even greater amount of drug weight, is not necessary.

*Maintain a Premises for the Purpose of Distributing a Controlled Substance*

In Worksheet A of the PSR, Mr. Haddock objects to the two-level enhancement pursuant to 2D1.1(b)(12) , for maintaining "a premise for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12) was recently added to the guidelines as part of the 2010 Fair Sentencing Act and became effective on November 1, 2010. Consequently, there is relatively little case law addressing this section of the sentencing guidelines and apparently none in the Fourth Circuit.  In one published opinion *United States v. Ortiz*, 807 F. Supp. 2d 746 (N.D. Ill. 2011), the court overruled the Government's objection to a failure to include a 2-level increase at sentencing under U.S.S.G. §2D1.1(b)(12) because the defendant's single use of a residence to receive a

drug shipment did not qualify as maintaining a premises for drug distribution; defendant did not use the premises for a sustained period of time. The Court relied heavily on the commentary of U.S.S.G. §2D1.1, note 17 which states the following:

> Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes.

In a United States District Court opinion, *United States v. Morales-Ortuno*, 879 F. Supp. 2d 608 (D. Tex. 2012)**,** finding no authority on the enhancement, the Court utilized cases interpreting 21 U.S.C. § 856 (the "crack house" statute) to determine that the enhancement did not apply when no drug transactions occurred at the premises. In the Fourth Circuit, the offense of maintaining a drug-involved premises under 21 U.S.C. § 856(a) requires proof that the defendant (1) knowingly (2) opened, leased, rented, or maintained any place (3) for the purpose of manufacturing, distributing, or using any controlled substance. See 21 U.S.C. § 856(a)(1); *United States v. Goff,* 404 Fed. Appx. 768, 770-771 (4th Cir. W. Va. 2010); *United States v. Russell*, 595 F.3d 633, 642 (6th Cir.), cert. denied, 131 S. Ct. 130, 178 L. Ed. 2d 78, 2010 WL 2102243 (2010); *United States v. Verners*, 53 F.3d 291, 295 (10th Cir. 1995); *United States v. Onick*, 889 F.2d 1425, 1431 (5th Cir. 1989).

Mr. Haddock contends the purpose of maintaining the residence was to lawfully reside therein. Mr. Haddock was running a website, not a traditional drug house as contemplated by Congress. Here, Mr. Haddock and his family used the premises continually for lawful purposes; namely, to live there. Not a single drug sale or buy was

conducted at the apartment. Shipments were made at the post office and payments were made via Western Union, mail, or money gram. Mr. Haddock resided at the three bedroom apartment with his wife and son. The primary purpose of maintaining the apartment was to provide a home to his family, not to facilitate the distribution of controlled substances. Mr. Haddock was employed, did not have any other residence besides the apartment. All of the items listed in the "room" at his residence, (except the drugs) the computer, fed ex boxes, can be found in any person's residence. Mr. Haddock had no other residence and he had a full time job as a merchant marine. Any drug "manufacturing" was merely a collateral use. Consequently, Section 2D1.1(b)(12) does not apply and should not be used to enhance Mr. Haddock's sentence. If the Court upholds the objection, the resulting guideline would be a level 37 with a sentencing range of 188-235 months.

*Possession of a Dangerous Weapon*

In Worksheet A of the PSR, Mr. Haddock objects to receiving a two level enhancement pursuant to U.S.S.G.§2D1.1(b)(1), possession of a dangerous weapon. The Fourth Circuit opinions regarding the enhancement are frequently fact specific. *See*: *United States v. Johnson*, 943 F.2d 383, 386 (4th Cir. 1991) Holding possession of the weapon during the commission of the offense is all that is needed to invoke the enhancement; *United States v. Nelson* , 6 F.3d 1049, 1056 (4th Cir. 1993) An enhancement was upheld when the guns and drugs were located in the same home; In contrast, in *United States v. McAllister*, 272 F.3d 228, 234 (4th Cir. S.C. 2001), the Court ruled that although the witness saw the defendant on many occasions with a handgun, it

was insufficient for the enhancement without testimony that the defendant had a gun during a drug transaction.

There are no statements by Mr. Haddock or his wife that the guns were used in connection with the distribution of drugs. In this case, it is the mere presence and proximity of the drugs to the guns when the residence was searched. This is not a standard drug distribution case. Neither Mr. Haddock, nor Mrs. Haddock ever met or spoke with any of the individuals who supplied them with drugs, or to whom they sold drugs. They ordered drugs online, had them shipped to another residence, picked them up, repackaged them, and then shipped them from the post office to the purchaser.

Further, Mr. Haddock was not in the residence at the time the guns were found, he was thousands of miles away in Guam. The Government implies that because he left his wife and co-conspirator with directions for running the drug business that he also knew the guns were in the house with the drugs. The instructions Mr. Haddock left his wife did not include any reference to the use of a weapon. For the reasons stated herein, the enhancement should not apply in this case. If the Court upholds both objections, the resulting offense level would be 35, with a sentencing range of 168-210.

## III. ARGUMENT

It is well known that the Guidelines are advisory and that the Court can vary from them. The defendant respectfully requests that the court impose a sentence of one hundred and twenty months, as that amount is sufficient but not greater than necessary to meet the sentencing goals of § 3553(a).

*A.*             *The Sentencing Guidelines are Advisory*

In *United States v. Booker*, the Supreme Court held that sentence guidelines are merely advisory. 543 U.S. 220 (2005). This decision was expanded with *Nelson v. United States,* where the Court decided that not only are the guidelines "*not mandatory* on sentencing courts; they are not *presumed* reasonable." 129 S. Ct. 890, 892 (2009). In fact, the guidelines only "reflect a rough approximation of sentences that *might* achieve § 3553(a)'s objectives." *Rita v. United States,* 551 U.S. 338, 350 (2007) (emphasis added). "Extraordinary circumstances [are not required] to justify a sentence outside the Guidelines range."   *Gall v. United States,* 128 S. Ct. 586, 595 (2007).

Instead of following the guidelines meticulously, the sentencing court should now use them simply as an advisory tool that should be considered together with the statutory considerations set forth in § 3553(a). *Gall,* 128 S. Ct. at 602; *Kimbrough v. United States,* 522 U.S. 85 (2007); *Cunningham v. California*, 127 S. Ct. 856 (1997). If the defendant is less culpable than the guidelines take into account, then the court may sentence below the guideline range. *United States v. Pauley,* 511 F.3d 468, 473 (4th Cir. 2007). Mr. Haddock respectfully submits that a sentence of 120 months is appropriate according to the factors of § 3553(a) as applied to his case.

B.            *3553(a) Factors as Applied to Mr. Jarvis*

Federal courts must impose the least amount of imprisonment necessary to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a). In determining the sentence to be imposed, the factors under the court's consideration include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense

and to deter criminal conduct in the future; (3) the kinds of sentence and the sentencing range established for the particular offense; and (4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar crimes.

    1.    *The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant.*

When Mr. Haddock began his involvement in the designer drug trade, many of the drugs were not recognized as a scheduled substance or analogue. He had a business license and a website. He thought he could outsmart the law with a technical loop hole. However, as Mark Twain so aptly stated "Education: the path from cocky ignorance to miserable uncertainty." Mr. Haddock received a crash course when federal agents approached first his parents, then his wife and co-conspirator, raiding their apartment, seizing all of their bank accounts, and their car. Mr. Haddock was unable to work and he and his wife were forced to separate and live on the kindness and charity of their families. Had he remained content with his job as a merchant marine, he would still be living with his wife, raising their son together.

Mr. Haddock is a thirty-two year old man with one child who has been in a relationship with his wife for over nine years (married for six and a half). He has worked since he was 16 years old and was working as a merchant marine at the time of this offense. He has been active in his son's life and has maintained a good relationship with him despite the current circumstances. According to his father and mother's letter to the court, he "has always been kind to others and would willingly help us when we needed his help" and "He has expressed severe remorse in an almost everyday fashion." His

sister states in her letter to the court " I believe in reference to his character, he is someone that with guidance, structure, and vision , he can overcome and have a remarkable life ahead of him."

    2.    *The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Deter Criminal Conduct.*

The § 3553(a) factors also take into account the need for the sentence to reflect the seriousness of the offense and to deter future criminal conduct. A sentence of 120 months will deter any future criminal conduct. This is Mr. Haddock's first criminal offense. He had no previous involvement in the drug trade. His involvement was for little over a year. If he is sentenced to 120 months, he will be given approximately ten months for each month he participated in the conspiracy. By the time he is released, his son will be fourteen years old. Ten years is more than enough to deter any repeat criminal behavior from Mr. Haddock.

    3.    *The Kinds of Sentence and the Sentencing Range Established.*

When considering the Sentencing Guideline range for Mr. Haddock, the court must remember that, "the Guidelines are only one of the factors to consider when imposing sentence..." *Gall v. United States,* 128 S. Ct. 586, 596 (2007). In Mr. Haddock's case, there are few cases to establish a sentencing range. As previously mentioned, many of the drugs are not listed as analogue drugs and most do not have quantity conversions in the sentencing guidelines. The drug weight attributed to Mr. Haddock, giving him a guideline sentence above the statutory maximum, does not reflect an analysis of empirical data and national expertise, but a best guess by the probation officer.

There are few cases that have been established regarding Analogue Drug sentencing or designer drugs. On October 18, 2012, this Court sentenced Archie Lee McClennan to 211 months in prison: 151 months for conspiracy to import a controlled substance and an additional 60 months for carrying and possessing a firearm during and in relation to and in furtherance of drug trafficking. McClennans advisory guideline range was between 151 and 188 months on the drug charge. On October 26, 2012, this Court also sentenced both Alex Lee McElheny and Michael Casey Brown. McElheny was sentenced to 24 months on his drug charge and 60 months on the gun charge. Brown, on the other hand, was sentenced to 121 months on the drug charge and 60 months on the gun charge. This Court sentenced Brown below his guideline range of 235-240 months.

In another designer drug case in the United States District Court, Eastern District of Virginia, on December 3, 2012, Judge Doumar sentenced Justin Steven Scroggins to 108 months in prison for the charge of conspiracy to import controlled substances. Scroggins was attributed with various weights of a wide variety of controlled substances and analogues, including Methylone. His calculated guideline range was 235-240 months.

## CONCLUSION

The calculated Guideline range exceeds a sentence sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a). For the reasons stated above, Mr. Haddock respectfully requests that the Court impose a sentence of no more than 120 months imprisonment coupled with supervised release, and allow him to receive substance abuse treatment and vocational training while incarcerated.

Respectfully submitted,

        Michael Haddock

By:_____/s/_____
    Shannon L. Hadeed, Esq.
    Virginia State Bar No. 70105
    Stallings, Bush, & Randall, P.C.
    2101 Parks Avenue, Suite 801
    Virginia Beach, Virginia 23451
    Phone:    757-422-4700
    Fax:      757-422-3320
    Email: shadeed@sbrlawgroup.com
    Counsel for Michael Haddock

## **CERTIFICATION OF SERVICE**

I hereby certify that on this 28th day of February, 2013, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Amy Cross, Esq.
Special Assistant U.S. Attorney
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Phone No. (757) 441-6331
Fax No. (757) 441-6689
Email: amy.cross@usdoj.gov

I further certify that I will mail this document by U.S. mail to the following non-filing user:

Jeffrey Noll, Senior U.S. Probation Officer
1001 Omni Boulevard, Suite 300
Newport News, Virginia 23606

By:_____/s/_____
Shannon L. Hadeed, Esq.
Virginia State Bar No. 70105
Stallings, Bush, & Randall, P.C.
2101 Parks Avenue, Suite 801
Virginia Beach, Virginia 23451
Phone:     757-422-4700
Fax:        757-422-3320
Email: shadeed@sbrlawgroup.com
Counsel for Michael Haddock

To The Honorable Arenda L. Wright Allen:

Your Honor, I am writing you this letter in regards to my son, Michael Haddock. I have been Michael's father for his entire 32 year life, Both myself and my wife Nancy feel that we provided Michael with a good upbringing, and also as a now retired Port Authority Police Officer for the Commonwealth of VA. My wife nancy is a Licensed Practical Nurse and is now retired as well due to medical disabilities.

Our son Michael was a well adjusted, respectful child and is as a adult. He has never shown violence, abuse or disrespect to ourselves, others or himself. He has always been kind to others and would willingly offer to help us when we needed his help, regardless of the situation. He has been a working member of the community since he was around 16, and has always maintained steady employment. Since March of last year he has lived at my home with my wife and myself, and has been respectful to the both of us. My wife has several medical problems and he has always offered assistance and care for her, and in an incident last december he carried his mother out to a waiting ambulance when she fell and broke her left hip.

His crimes are extremely shocking and totally unexpected as he has always been one to not only respect the law and law enforcement, but also has always had good common sense and judgement on most occasions, even more so as he became a husband and then a father. I am very proud of him regardless of his crimes and I do not feel in my heart he would ever make the same mistakes again.

To us it is it is clear that his choices he made during the time period of 2011 until February 2012 were against not only the law but his own moral compass, and while totally not acceptable it is possible that he made his gross errors in judgement due to external pressures placed on him during that time in his life. At the time of the instant offenses he was undergoing a period of medical procedures which included a major sinus surgery and also had the majority of his stomach removed in a gastric sleeve operation that placed him without any income for about 8 months.

He made the most awful choice in how to deal with the situation at the time to provide for his family while he was out of work, and did not want to acknowledge or accept that what he was doing was morally and legally wrong. He has expressed severe remorse in a almost every day fashion since federal agents raided his home. He was overseas at the time, and explained how distraught he was being many thousands of miles away and could not be there to deal with it personally when it occurred and that his wife was faced with dealing with it alone until he was able to return. He has been suffering a great deal of depression and sadness at not only what he has done but what he perceives he has done to his son, wife and more importantly he says to the community. He has lost a great career with the government as well as his home, most of his possessions and quite a bit of self-respect.

I fully believe in my heart that he is truly remorseful in his crimes and wants to never again repeat the same mistakes. He has expressed his desire to use this awful set of events to help others prevent the same fate and to help those who are suffering from substance abuse and addiction. His only desire is to remain involved with his son so he can provide the proper father role model for him, so that he grows up mindful of his father's mistakes and that he does not repeat them.

Michael is very aware that he faces incarceration, and he stands by your just decision regarding his judgement and sentence. I do not feel it would be productive for him or society at large for him to be imprisoned for a unjust amount of time as this past year he has been suffering severe mental and emotional turmoil from his mistakes. He has been attending Alcoholics anonymous since October of last year, and has been very proactive in becoming a better person for himself and his family.

Thank you very much for your time to read this and we both hope that it will help you understand our son Michael a bit better.


Very Respectfully,

*William T. Haddock*

William T. Haddock

Nancy Haddock
LPN, PCCN -Ret.

*Nancy Haddock*

December 8, 2012

To whom it may concern,

I'm writing in reference to my brother, Michael Lee Haddock. I'm his sister, we share the same mother but different dads. I'm 12 years his senior, and we grew up at our grandparents house for the majority of our lives.

I believe that Michael's choices over the past several years that have brought on the consequences that he is facing were foolish. I believe that he would agree. I also believe that in reference to his character, he is someone that with guidance, structure, and vision, he can overcome and have a remarkable life ahead of him. I have also never known Michael to be violent, abusive, or have evil intent toward himself or anyone else.

Michael knows that he is loved by his family, wife, and son. I know that I will stand by him and support him as his sister as he faces the future, but I will in no way condone or give support to what he has done.

Please take this letter as a positive reference for Michael. He is an awesome young man, and I believe he will use this experience to make a difference in his life and the life of others for the good.

Thank you,

*JM Prabowo*

Jennifer M. Prabowo, RN, PCCN, MSed